1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

10    JEFFREY J. BAUS,

11                                Petitioner,

12            v.

13    RON HAYNES,

14                                Respondent.

CASE NO. 2:21-cv-00225-TL-JRC

REPORT AND RECOMMENDATION

NOTED FOR:  January 7, 2022

15

16          The District Court has referred this petition for a writ of habeas corpus to the

17    undersigned.

18          In April 2017, a jury convicted petitioner of second-degree rape and second-degree

19    assault of another person, "RM". Dkt. 20-1, at 2.  Petitioner now seeks relief from custody

20    related to these convictions and asserts four grounds for relief.[1]

21

22          [1] The operative petition listed three additional grounds. *See* Dkt. 12, at 22–27.  Petitioner
      subsequently clarified that he wished to withdraw those grounds. Dkt. 17.  As the Court has
23    informed petitioner, his request to withdraw is self-executing, so that grounds five through eight
      have been voluntarily dismissed and so that the Court considers only grounds one through four.
24    *See* Dkt. 18, at 1–2; Fed. R. Civ. P. 41(a)(1)(A).

REPORT AND RECOMMENDATION - 1

1    First, he argues that the prosecutor committed misconduct in closing argument by calling

2  the presumption of innocence into question.  However, a Washington State court addressed this

3  argument and reasonably determined that the prosecutor's comments, in context, did not misstate

4  the law or question the presumption of petitioner's innocence.  This ground for relief lacks merit.

5    Second, for the latter three grounds in his petition, petitioner alleges that his trial counsel

6  rendered ineffective assistance by failing to investigate RM's drug use, petitioner's medical

7  history, and petitioner's neighbors.  However, the state courts reasonably applied the law

8  governing claims of ineffective assistance of counsel and reasonably determined the facts in light

9  of the evidence presented when they rejected these claims as failing to show deficient

10  performance or prejudice from counsel's alleged oversights.  Therefore, the habeas petition

11  should be denied, this matter should be dismissed with prejudice, and no certificate of

12  appealability should issue.

13                                    **BACKGROUND**

14    At petitioner's jury trial, the State presented the testimony of witnesses including RM and

15  police officers, investigators, and a forensic scientist who worked on the case.

16    RM testified that on the evening of April 22, 2016, petitioner approached her at a casino,

17  where RM, who was homeless, addicted to heroin, and had nowhere else to go, spent time.  Dkt.

18  22, at 50–51, 54.  RM stated that although she felt uneasy because petitioner would not let her

19  tell her friends that she was leaving, she eventually left the casino with him to go to his home.

20  *See* Dkt. 22, at 58.  She testified that she became increasingly afraid of petitioner on the drive, as

21  he began making overtly sexual comments toward her, and at his home.  Dkt. 22, at 62–63, 70.

22  However, she did not feel that she could leave because she did not have anywhere to go.  Dkt.

23  22, at 70.

24

1    RM testified that petitioner attacked her at his house. Dkt. 22, at 83. She stated that he

2  assaulted her, including hitting her face, throwing her on his bed, forcing her to engage in oral

3  sex, and threatening her with a knife. Dkt. 22, at 85–98. After the assault, RM persuaded

4  petitioner to drive her from the house, and she was able to flee. Dkt. 22, at 108.

5    Police who interviewed RM on April 24, 2016, testified that she had recent, obvious

6  injuries—black eyes, a possibly broken nose, one eye nearly swollen shut, and faint ligature

7  marks on her wrists. Dkt. 22, at 198–201, 214. RM identified petitioner as her assailant. Dkt.

8  22, at 192. DNA testing of items from petitioner's home corroborated that RM had been present.

9  *E.g.*, Dkt. 22-1, at 81.

10    Petitioner did not testify in his defense. The defense called one witness: a forensic nurse

11  examiner who testified that she met with RM on April 24, 2016, and that RM appeared very

12  drowsy and declined a forensic examination. Dkt. 21-1, at 93, 96–97. In closing, the defense

13  argued that RM had preyed on petitioner and attempted to undermine her credibility by pointing

14  to various inconsistencies and gaps in her testimony, as well as emphasizing her admitted heroin

15  usage at the time. Dkt. 21-1, at 144–46, 153.

16    The jury convicted petitioner, and he was sentenced to 100 months to life in prison. Dkt.

17  20-1, at 6. Petitioner sought direct review, arguing that the prosecutor committed misconduct

18  and that conditions of his sentence were unconstitutional. *See* Dkt. 20-1, at 36. Division One of

19  the Court of Appeals affirmed his convictions, although the court remanded to strike a

20  community custody condition from his sentence. *See* Dkt. 20-1, at 20. Petitioner filed a petition

21  for review in the state supreme court, which denied the petition without comment. Dkt. 20-1, at

22  167. On March 22, 2019, the Court of Appeals issued the mandate. Dkt. 20-1, at 169.

23

24

1    Petitioner filed a personal restraint petition ("PRP") in Division One, arguing that his trial

2    counsel rendered ineffective assistance in various regards.  Dkt. 21, at 3.  The Court dismissed

3    the petition by order, finding that petitioner had failed to present an arguable basis for collateral

4    relief.  Dkt. 21-1, at 27.  Petitioner filed a motion for discretionary review in the state supreme

5    court (Dkt. 21-1, at 29), but the Commissioner denied the motion.  Dkt. 21-1, at 55–56.  The

6    state supreme court also denied petitioner's motion to modify the Commissioner's ruling (Dkt.

7    21-1, at 70), and the matter became final on March 26, 2021.  Dkt. 21-1, at 72.

8    In February 2021, petitioner brought suit in this Court, acting *pro se*.  Dkt. 1.  Respondent

9    has answered the petition, including filing the record of state court proceedings, and the matter is

10    ripe for review.  *See* Dkt. 19.

11                                                    **DISCUSSION**

12    **I.  AEDPA Standard**

13    Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),

14    petitioner is barred from relitigating any claim presented to the state courts unless the

15    adjudication "resulted in a decision that was contrary to, or involved an unreasonable application

16    of, clearly established Federal law, as determined by the Supreme Court of the United States"

17    (28 U.S.C. § 2254(d)(1)) or the adjudication "resulted in a decision that was based on an

18    unreasonable determination of the facts in light of the evidence presented in the State court

19    proceeding."  28 U.S.C. § 2254(d)(2); *see Harrington v. Richter*, 562 U.S. 86, 98 (2011).

20    **II.  Prosecutorial Misconduct**

21    Petitioner alleges that the prosecutor committed misconduct in closing argument by

22    arguing, "I mean, why are we here if the presumption of innocence means he's innocent?"  Dkt.

23    12, at 3; Dkt. 21-1, at 156.  Respondent asserts that the Court must dismiss this claim because a

24

1   state law procedurally barred this argument in state court. Dkt. 19, at 14. Alternatively,

2   respondent argues that the claim fails on the merits because the state court reasonably concluded

3   that the prosecutor did not commit misconduct. *See* Dkt. 19, at 22. The Court agrees with the

4   second of respondent's two arguments, although the Court disagrees with the first of

5   respondent's arguments.

6        Washington courts apply two standards to claims that a prosecutor committed

7   misconduct. *State v. Emery*, 174 Wn.2d 741, 760 (2012). If defense counsel timely objected to

8   the prosecutor's statements, Washington courts will consider whether the statements were

9   improper and if so, whether they resulted in prejudice that was substantially likely to affect the

10  jury's verdict. *Id.* at 760. If defense counsel did not timely object, then Washington courts will

11  consider the issue "not appropriately raised on appeal" unless the "prosecutorial misconduct is so

12  flagrant and ill-intentioned that no curative instructions could have obviated the prejudice

13  engendered by the misconduct." *State v. Belgarde*, 110 Wn.2d 504, 507 (1988); *see also Emery*,

14  174 Wn.2d at 760–61.

15       Here, Division One cited the standard for unobjected-to arguments, considered

16  petitioner's claim, and concluded that the prosecutor did not make an improper statement. Dkt.

17  20-1, at 27–28. Specifically, the court held that "[t]he argument was consistent with the jury's

18  instructions," it "did not indicate that the presumption of innocence erodes as the State presents

19  evidence of the defendant's guilt during the trial," and it did not imply that petitioner was guilty

20  because of the charges filed against him. Dkt. 20-1, at 28. "Rather, the prosecutor emphasized

21  that the presumption of innocence may ultimately be overcome by evidence that meets the

22  State's burden of proof." Dkt. 20-1, at 28. As noted, the state supreme court declined review of

23

24

1    this holding without comment, so that this Court "looks through" to Division One's decision.

2    *See Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991).

3        Respondent incorrectly argues that Division One's analysis was a procedural ruling and

4    that because Division One concluded that the argument was procedurally barred in state court,

5    this Court cannot review petitioner's argument. *See* Dkt. 19, at 20.  Although earlier in its

6    opinion, Division One referenced the Washington case law noted above under which failure to

7    object at trial waives an argument of prosecutorial misconduct on appeal, Division One's holding

8    nevertheless rested on the merits of petitioner's argument.  The appellate court held that the

9    prosecutor did not make an improper statement.  "[U]nless the state court makes clear that it is

10   resting its decision denying relief on an independent and adequate state ground, it is presumed

11   that the state denial was based at least in part upon federal grounds, and the petitioner may seek

12   relief in federal court." *Siripongs v. Calderon*, 35 F.3d 1308, 1317 (9th Cir. 1994), *as amended*

13   *on denial of reh'g and reh'g en banc* (Oct. 13, 1994); *see also Lambrix v. Singletary*, 520 U.S.

14   518, 525 (1997) (explaining that a federal court should typically address a "procedural-bar issue"

15   first but may give priority to the merits of an issue where such would better serve judicial

16   economy).

17       On the merits, however, the Court agrees with respondent that Division One did not

18   unreasonably apply clearly established federal law or determine the facts of the case when it held

19   that the prosecutor did not make an improper statement in this regard.  A prosecutor commits

20   misconduct if the prosecutor misstates the law in closing. *See Ford v. Peery*, 999 F.3d 1214,

21   1224 (9th Cir. 2021).  And "[c]riminal defendants lose the presumption of innocence only once

22   they have been convicted." *Id.*

23       Here, however, it was reasonable for the appellate court to conclude that viewed in

24

REPORT AND RECOMMENDATION - 6

1    context, the prosecutor's closing argument did not tell the jury that at that time, the presumption

2    of innocence had ended.  As the state court observed, the prosecutor explained that the

3    presumption of innocence was not conclusive and that the jury could find that the evidence

4    showed that petitioner was guilty beyond a reasonable doubt, at which point the State would

5    have overcome the presumption of innocence.  Because the state courts did not unreasonably

6    apply federal law or unreasonably determine the facts in light of the evidence presented when

7    they concluded that there was no prosecutorial misconduct, this ground for relief fails.

8           **III.  Ineffective Assistance of Counsel**

9                  **A. Legal Standard**

10           Under *Strickland v. Washington*, to prevail on a claim of ineffective assistance of

11    counsel, a petitioner must show "that counsel's performance was deficient" and "that the

12    deficient performance prejudiced the defense."  466 U.S. 668, 687 (1984).  Deficient

13    performance is that which falls below "an objective standard of reasonableness." *Id.* at 688.  The

14    measure of prejudice is whether "there is a reasonable probability that, but for counsel's

15    unprofessional errors, the result of the proceeding would have been different.  A reasonable

16    probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

17    When reviewing whether a state court properly applied *Strickland*, this Court's review is "double

18    deferential," as the Court defers both to defense counsel's effectiveness and the state court's

19    decision.  *Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (internal quotation marks

20    and citation omitted).

21                  **B.  Victim's Drug Use**

22           Petitioner asserts that his counsel rendered ineffective assistance by failing to investigate

23    RM's drug use, including that she had eleven criminal cases in the last two years.  Dkt. 12, at 9–

24

1    12.  Respondent correctly points out that this claim is cognizable solely to the extent it pertains to

2    RM's alleged methamphetamine use.  Dkt. 19, at 34.

3         Petitioner's allegations in this regard in his PRP were limited to his counsel's alleged

4    failure to investigate RM's methamphetamine use—not her heroin or other substance abuse.  *See*

5    Dkt. 21, at 3; Dkt. 21-1, at 39.  Petitioner would now be barred from bringing additional claims

6    of ineffective assistance of trial counsel in state court (*see* RCW 10.73.090 (creating a one-year

7    time limit for PRPs); RCW 10.73.140 (generally barring second PRPs); RAP 16.4(d) (same)) and

8    the rules barring him from doing so are independent and adequate state bases for denying relief.

9    *See, e.g.*, *Basra v. Sinclair*, No. C18-186-TSZ, 2021 WL 3410009, at *2 (W.D. Wash. June 17,

10   2021), *report and recommendation adopted*, No. C18-186-TSZ, 2021 WL 3403535 (W.D. Wash.

11   Aug. 4, 2021); *Bolar v. Luna,* 2007 WL 1103933, at *11 (W.D. Wash. April 10, 2007).

12   Therefore, to the extent that petitioner seeks to bring a claim about RM's drug use other than the

13   use of methamphetamine, his claim cannot be heard in this Court.

14        The Court construes petitioner's argument that defense counsel should have investigated

15   eleven criminal cases against RM as a claim that defense counsel could have used the other

16   criminal cases as evidence of methamphetamine usage.  *See* Dkt. 12, at 11.  The state supreme

17   court commissioner ruled that with respect to this argument, petitioner failed to show issues

18   meriting review, such as that the appellate court improperly applied the law related to claims that

19   counsel rendered ineffective assistance.  *See* Dkt. 21-1, at 55.  Because this conclusion largely

20   adopted and relied on the reasoning from Division One's opinion, the Court considers Division

21   One's rationale, as well.  *See Barker v. Fleming*, 423 F.3d 1085, 1093 (9th Cir. 2005).

22        Division One explained that petitioner's argument failed because first, there was no basis

23   for counsel to investigate the use of drugs other than heroin—an issue that defense counsel

24

1  explored at trial—and second, there was not a reasonable likelihood that the outcome would have

2  differed in light of RM's admitted drug use during the relevant period.  *See* Dkt. 21-1, at 23–24.

3         Petitioner now cites to a list of criminal cases, in which RM was supposedly a defendant.

4  *See* Dkt. 12, at 52.  The Court cannot consider evidence that was not presented to the state court

5  when analyzing this matter.  *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011).

6         Further, even if the Court could consider such evidence, petitioner fails to explain how

7  this list of case numbers would shed any light on RM's methamphetamine use during the period

8  in question.  Petitioner fails to show that the state courts unreasonably determined the facts in

9  light of the evidence presented when they concluded that petitioner had not shown that his

10 counsel knew of RM using methamphetamine during the relevant period such that counsel's duty

11 to investigate was triggered.   Indeed, the record flatly contradicts petitioner's claim that counsel

12 overlooked the "obvious" fact of RM's drug abuse.  At trial, defense counsel made much of

13 RM's admitted heroin use during the days in question, developing testimony on this subject and

14 referring back to RM's drug use during closing argument.

15        Because the state courts did not unreasonably apply federal law or determine the facts in

16 light of the evidence presented when they concluded that trial counsel did not render deficient

17 performance in this regard, the Court does not address the state court's alternative holding that

18 petitioner failed to show prejudice.  *See Strickland*, 466 U.S. at 700 (a petitioner must show both

19 prongs to succeed on a claim of ineffective assistance of counsel).

20        **C.  Petitioner's Medical History**

21        Petitioner next argues that his counsel should have investigated his medical history by

22 interviewing his doctor and should have investigated evidence that petitioner could not

23

24

REPORT AND RECOMMENDATION - 9

1  physically perform the acts alleged.  *See* Dkt. 12, at 14.  Again, the Court finds that the state

2  courts reasonably rejected this claim.

3      For the reasons noted above, the Court looks to Division One's rationale when deciding

4  this issue.  Division One ruled that even if petitioner showed that counsel refused to investigate

5  in this regard, petitioner could not establish prejudice within the meaning of *Strickland*:

6      According to the evidence at trial, Baus was more than a foot taller and a
   hundred pounds heavier than the victim.  Evidence that Baus strained his back by
7      lifting a 30-pound bag of concrete more than three years before the incident does
   not demonstrate that he was physically unable to throw R.M. on the bed in 2016.
8      And the evidence does not in any way suggest that Baus could not have assaulted
   R.M. by punching her in the face.
9      R.M. responded affirmatively to the question of whether Baus's penis was
   erect.  She provided no further description beyond reporting that it caused her to
10     gag.  Evidence Baus now presents that he received treatment in 2017 for erectile
   dysfunction, does not lead to a necessary inference that R.M.'s testimony was
11     untrue.  More importantly, it does not establish that Baus could not have committed
   the rape by shoving his penis in her mouth.
12  Dkt. 21-1, at 24–25.

13     Petitioner cites to medical records from March 2017 and February 2013 and a doctor's

14  note that he has suffered from erectile dysfunction since approximately 2013—evidence that he

15  also provided in support of his PRP.  Dkt. 12, at 54–59; Dkt. 21, at 38–43.  However, he fails to

16  show that the state courts, which looked at this evidence and reached the conclusions noted

17  above, unreasonably determined the facts in light of the evidence presented.

18                    **D.  Failure to Interview Neighbors**

19     Petitioner argues that this counsel rendered ineffective assistance by failing to interview

20  his next-door neighbors to confirm whether they heard RM on the night of the assault or to

21  discover that "someone . . . had an encounter with a female who looked like an image of [RM]

22  on the night after the" incident.  Dkt. 12, at 18–19.  Petitioner has not shown that the state courts

23

24

REPORT AND RECOMMENDATION - 10

1    unreasonably determined that he failed to show prejudice from his counsel's alleged

2    ineffectiveness in this regard.

3            Division One rejected petitioner's argument that his counsel should have investigated his

4    neighbors because on the same weekend as the assault, a woman knocked on a neighbor's door

5    and reported that she was fleeing from a man. Dkt. 21-1, at 25. The state court addressed

6    whether the alleged failure of petitioner's counsel resulted in prejudice:

7            Baus provides transcripts of brief interviews with the neighbors that occurred in
             2019. Those transcripts provide few details, and several of those details indicate
8            that the woman described was not R.M. According to the neighbors, the woman's
             clothing was different from R.M.'s, she was extremely dirty, she identified a
9            specific road nearby where she lived, and they did not recall observing any visible
             injuries. And significantly, it is clear from the neighbors' statements that police
10           responded to the incident, and therefore, presumably additional information is
             known about the identity of both the woman and the person she fled from. Baus
11           does not provide any additional evidence. And since Baus did not dispute that he
             and R.M. were together at his home on the night in question, it is not clear that the
12           evidence would have been particularly helpful to his defense.

13   Dkt. 21-1, at 25–26.

14           Petitioner points to the same interview transcripts that he provided to Division One in

15   support of his PRP, arguing that these transcripts show that someone who "looked like" RM was

16   in the area the night after the incident, but he does not show that Division One unreasonably

17   determined the facts in light of the evidence presented. *See* Dkt. 21, at 45–57; Dkt. 12, at 19. As

18   Division One referenced, in contrast to the information in the transcripts that petitioner provided,

19   the evidence at trial was that RM was visibly injured by the end of the night. Dkt. 22, at 170.

20   Nor was it unreasonable for Division One to reject petitioner's claim to the extent that he

21   believed that the neighbors should have been interviewed regarding whether they heard

22   screaming on the night in question, where petitioner failed to rely on more than speculation that

23   this investigation would have uncovered exculpatory evidence.

24

REPORT AND RECOMMENDATION - 11

**IV.  Other Issues**

The Court also briefly addresses two issues that petitioner raised in his reply brief.

First, petitioner asserts that the Court did not rule on a motion filed by respondent for an extension of time.  Dkt. 23, at 3.  The Court denied this motion.  Dkt. 11.

Second, petitioner asserts that the Court lacked authority to strike petitioner's motion to dismiss (Dkt. 10) and direct petitioner to file a complete habeas petition.  Dkt. 23, at 3; *see* Dkt. 11.  As the Court explained, although titled a motion to dismiss, this motion was construed as a motion to amend, which the undersigned may rule upon by order.  *See* Dkt. 11, at 1.

**CERTIFICATE OF APPEALABILITY**

Petitioner seeking post-conviction relief under 28 U.S.C. § 2254 may appeal a district court's dismissal of the federal habeas petition only after obtaining a certificate of appealability (COA) from a district or circuit judge.  A certificate of appealability may issue only if petitioner has made "a substantial showing of the denial of a constitutional right."  *See* 28 U.S.C. § 2253(c)(2).  Petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  Pursuant to this standard, this Court concludes that petitioner is not entitled to a certificate of appealability with respect to the grounds for relief raised in his petition.

**CONCLUSION**

The habeas petition in this matter should be denied, and the case should be dismissed with prejudice.  No certificate of appealability should issue.

1       Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

2 fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P.

3 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo*

4 review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those

5 objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v.*

6 *Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit

7 imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on

8 January 7, 2022, as noted in the caption.

9       Dated this 22nd day of December, 2021.

10

11

12                             J. Richard Creatura
                            Chief United States Magistrate Judge

13

14

15

16

17

18

19

20

21

22

23

24